The People of the State of New York ex rel. Oneonta Light and Power Company, Relator, *v.* Public Service Commission, Second District, and Southern New York Power Company, Respondents.

Third Department, November 14, 1917.

Public service corporations — electric company not having procured consent of local authorities or approval of Public Service Commission restrained from continuing service — Public Service Commissions Law, section 68, construed — no exception in favor of plant erected upon private property.

An electric lighting company, having obtained the consent and franchise from a town board and the approval of the Public Service Commission to furnish electricity for public and private purposes within an established lighting district, is entitled to an injunction restraining another company

from operating and soliciting business in the same lighting district, where it appears that the predecessor of the latter company was incorporated under an act providing that it should not be permitted to exercise any of the powers conferred upon it within the limits of any town, without securing the consent of the local authorities, and that said company has failed to procure such consent.   This is true, although the latter company obtains the electricity from its plant in an adjoining city.

Section 68 of the Public Service Commissions Law providing that " No * * * electrical corporation shall begin construction of * * * electric plant without first having obtained the permission and approval of the Commission of each district within which any part of the work of construction is to be performed * * *," makes no exception in favor of a plant erected upon private property.

The erection of poles, the installation of wires and the selling and distributing of electricity by an electric company constitutes a violation of the statute, although the actual generating of electricity was carried on in an adjoining city.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of March, 1917, directed to the Public Service Commission, Second District, commanding it to certify and return to the office of the clerk of the county of Albany all and singular its proceedings had in directing the relator to cease doing business in certain localities.

*Thompson & Van Woert* [*J. F. Thompson* of counsel], for the relator.

*Ledyard P. Hale*, for the respondent Public Service Commission.

*N. P. Willis*, for the respondent Southern New York Power Company.

LYON, J.:

The determination of the Public Service Commission, Second District, sought to be reviewed, directed that the relator cease from transmitting and distributing electricity for lighting, heating and power purposes in that portion of the town of Oneonta, Otsego county, N. Y., lying westerly of the city of Oneonta, known as Oneonta Plains.

In July, 1916, the relator received from a development company which was the owner of tracts of land at Oneonta

34   People ex rel. Oneonta L. & P. Co. *v.* Pub. Serv. Comm.

Third Department, November, 1917.          [Vol. 180.

Plains, a grant of the right to erect and maintain electric light and power lines in streets, then sixteen in number, and in public places, upon certain conditions, one of which was that the relator should at its own expense maintain electric lights at certain intersections. Pursuant to such grant the relator set poles and constructed and put into operation an electric system, lighting private houses as well as streets. It did not erect a generating plant at Oneonta Plains, but received its current through connection with its electric system in the city of Oneonta.

In August, 1915, the town board of the town of Oneonta duly established a lighting district at Oneonta Plains. In November following, the town board granted to the Colliers Light, Heat and Power Company a consent and franchise authorizing it to erect and maintain in the streets in said lighting district at Oneonta Plains poles and lines of wires, and to furnish electricity for street lighting and for light, heat and power purposes in any and all public and private places and buildings within said lighting district, said consent and franchise to be subject to the approval of the Public Service Commission, Second District, which approval was given in February, 1916. In November, 1915, said town board and the Colliers Company entered into an agreement for the installing by said company of an incandescent street lighting system to be paid for at rates specified in said agreement, which was to remain in force for ten years. Following the execution of this agreement the Colliers Company installed a lighting system at Oneonta Plains and placed electric lights in the streets and public places wherever directed by the town board, and ·solicited and obtained the lighting of private houses.

After the Colliers Company had obtained its franchise to operate an electric system at Oneonta Plains, the relator continued to operate its electric system there, and to solicit and obtain additional contracts for house lighting, and is now furnishing the same under the claim of right to do so.

In August, 1916, the Colliers Company instituted a proceeding before the Public Service Commission, Second District, to obtain an order restraining the relator from continuing to operate its system within said lighting district. On February 15, 1917, after hearing had, the Commission made the order

People ex rel. Oneonta L. & P. Co. v. Pub. Serv. Comm.  35

App. Div.]          Third Department, November, 1917.

sought to be reviewed, directing the relator to desist within thirty days from the date of the service of the order upon it from transmitting and distributing electricity for lighting, heating and power purposes in that portion of the town of Oneonta known as Oneonta Plains. A rehearing having been denied this proceeding of certiorari was instituted by the relator. The Colliers Company has lately been merged into the Southern New York Power Company, which has become a respondent herein.

The relator bases its claim of right to construct, maintain and operate an electric system in Oneonta Plains upon the grounds that its rights antedate the authority of the Public Service Commission; that the Public Service Commission had no jurisdiction over private property; and that in occupying the private lands at Oneonta Plains, the relator did not " begin construction of an electric plant," within the meaning of section 68 of the Public Service Commissions Law.

The act under which the predecessor of the relator was incorporated (Laws of 1898, chap. 234), entitled " An act to incorporate the Electric Water Power Company of Oneonta, Otsego County," created the persons named a corporation with power to construct and maintain a dam across the Susquehanna river, and to acquire lands for that purpose, and in the final clause provided: " The power granted by this act to transmit and use electricity shall be subject to the general laws of the State and the municipal ordinances of the several villages and towns within which it shall be transmitted or used. Such corporation shall not be permitted to exercise any of the powers conferred by this act within the limits of any town, village or city, without securing the consent of the local authorities thereof, as provided by law for the exercise of a similar power by any other person or corporation." There is nothing in the record indicating that the relator ever secured the consent of the local authorities to construct or operate an electric lighting, power or heating system at Oneonta Plains. No such claim was made upon the argument, or is contained in the brief submitted on behalf of the relator, and in fact it is practically conceded that no such consent was ever obtained.

As to the claim that the Public Service Commission has no

jurisdiction over private property, and hence cannot control or supervise electric lighting and power systems so long as they are not constructed upon public highways or in public places, it is to be observed that section 68 of the Public Service Commissions Law makes no exception in favor of a plant erected upon private property. The section provides: "No  *  *  * electrical corporation shall begin construction of  *  *  * electric plant without first having obtained the permission and approval of the Commission of each district within which any part of the work of construction is to be performed. *  *  *." The proposition that the construction and operation of a lighting system by an electrical corporation is beyond the supervision of the Public Service Commission so long as the electric current is sold and distributed upon private property contravenes some of the most important purposes for which the Public Service Commission was created and given supervision of this class of public utilities, viz., the protection of the public from improper and dangerous construction, and from exorbitant charges, and the protection of the corporation itself from disastrous competition. That the Legislature had the power to prescribe the conditions upon which a corporation to which it gave existence might operate cannot be questioned. Neither can the right of the Public Service Commission to exercise authority over public transportation corporations be doubted. (*People ex rel. New York & North Shore Traction Co.* v. *Public Service Commission,* 175 App. Div. 869.)

As to the claim that in doing what it did in occupying private lands at Oneonta Plains, the relator did not " begin construction of an electric plant," subdivision 12 of section 2 of the Public Service Commissions Law provides that the term "electric plant" includes all real estate, fixtures and personal property operated, owned, used or to be used for or in connection with or to facilitate the generation, transmission, distribution, sale or furnishing of electricity for light, heat or power. It was not necessary in order to create a violation of the statute that the actual generation of electricity should be carried on at Oneonta Plains. The erection of poles and the installation of wires and the selling and distributing of electricity by the relator constituted such violation.

The determination of the Public Service Commission should be affirmed, with fifty dollars costs and disbursements, and the stay enjoining the enforcement of the order appealed from vacated.

All concurred.

Determination unanimously confirmed, with fifty dollars costs and disbursements, and stay vacated.